# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.

JOHN ANDERSON RANKIN,

  Defendant.

Case No. 2:15-CR-168
CHIEF JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Revoke Detention Order (ECF No. 140), and the Government's Response in Opposition to Defendant's Motion (ECF No. 141). For the reasons that follow, the Court **DENIES** Defendant's Motion.

## I.

Defendant John Anderson Rankin was notified in April 2011 that he was under criminal investigation for suspicious individual and corporate tax returns that he filed on behalf of himself and one of his businesses, Connectivity Systems, Inc. ("CSI"). In July 2015, the grand jury returned a 17-count indictment against Mr. Rankin, charging him under three federal statutes: (1) failure to withhold F.I.C.A. and Medicare taxes, 26 U.S.C. § 7202; (2) the willful making of false declarations on a federal income tax return, 26 U.S.C. § 7206(1); and (3) willfully misleading and obstructing agents of the Internal Revenue Service ("IRS"), 26 U.S.C. § 7212(a).

In November 2015, Mr. Rankin filed a Motion to Dismiss Under the Double Jeopardy and Due Process Clauses to the United States Constitution. (ECF No. 13.) The Court denied

that Motion (ECF No. 27), and Mr. Rankin appealed that decision. (ECF No. 32.) In November 2016, the United States Court of Appeals for the Sixth Circuit affirmed this Court's decision. (ECF No. 36), issuing the Mandate on December 13, 2016.

On March 2, 2017, Mr. Ranking then filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on April 24, 2017. (ECF Nos. 40, 46.)

On May 1, 2017, Mr. Rankin moved for permission to represent himself at trial. (ECF No. 41.) The Court held a hearing on this Motion. (ECF Nos. 43, 45, 48.) The Court granted Mr. Rankin's request, but gave him several cautionary warnings about self-representation and strongly suggested that he utilize stand-by counsel. Mr. Rankin accepted standby counsel.

Mr. Rankin's case was tried to a jury beginning on August 28, 2017. Mr. Rankin represented himself at trial and, while his standby counsel was not at counsel table, he was present in the gallery throughout the trial. Mr. Rankin was permitted to, and consistently did, consult with standby counsel any time he requested. After a two week trial, the jury found Mr. Rankin guilty on all 17 counts.

After the jury returned its verdicts, the government moved to revoke Mr. Rankin's bond, and the Court heard oral argument regarding Mr. Rankin's detention pending sentencing. The Court then set forth the applicable legal standards from 18 U.S.C. § 3143(a)(1) and applied them to Mr. Rankin's situation before determining that he had failed to prove by clear and convincing evidence that he is not likely to flee or pose a danger to the community. The Court noted that while Mr. Rankin does not pose a danger to the community, he is a serious flight risk. The Court offered several bases for its decision, including the lengthy prison sentence that Mr. Rankin

faces, his vast financial resources, and the disregard for the judicial system that Mr. Rankin displayed throughout these proceedings and earlier state court proceedings in which Mr. Rankin obstructed a foreclosure sale for which he was held in contempt.

On September 30, 2017, Mr. Rankin filed his Motion to Revoke Detention Order, which is the subject of this decision.

## II.

Federal Rule of Criminal Procedure 46 conditions a convicted person's eligibility for release pending sentencing or appeal on 18 U.S.C. § 3143. This statute is the product of the Bail Reform Act of 1984. That statute provides in relevant part, as follows:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any person or the community if released . . . ."

18 U.S.C. § 3143(a)(1).

The Sixth Circuit has held that the statute creates a presumption against release pending appeal and casts the burden upon defendants to justify release on bail following conviction. *United States v. Vance*, 851 F.2d 166, 168–70 (6th Cir. 1988). The reason for this presumption in favor of post-conviction detention is straight forward: "Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal. The conviction, in which the defendant's guilt has been established beyond a reasonable doubt, is presumably correct in law." *Vance*, 851 F.2d at 170 (quotation omitted). The Bail Reform Act provides in relevant part:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-

3

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person . . . ;
>
> (3) the history and characteristics of the person . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S. § 3142(g).

## III.

Mr. Rankin has moved for "revocation of the September 14, 2017 Detention Order pursuant to 18 U.S.C. § 3143 so he can be released pending sentencing." (Def.'s Mot. at 1, ECF No. 140.) Mr. Rankin advances four reasons to support his request: (1) "to ensure that his businesses would continue to operate if he were incarcerated because he believed that he would be acquitted . . . [which] is working a hardship on his employees and businesses which is concurrently impairing his ability to make restitution"; (2) "Mr. Rankin accepts the consequences of jury's verdict"; (3) Mr. Rankin is making restitution"; and (4) "Mr. Rankin is a not a flight risk. . . . [and] has caused his passport to be deposited with the clerk's office on September 29, 2017 in an effort to convince the Court that he is not a flight risk." *Id.* at 1–4.

The government posits that of these four reasons, only one of them relates to the factors this Court is charged to utilize in evaluating whether Mr. Rankin should be released following his conviction, *i.e.*, risk of flight. The Court will evaluate this reason first, with the relevant statutory considerations that this Court relied upon in its in-court conclusion that Mr. Rankin failed to show by clear and convincing evidence that he was not likely to flee. The Court will next consider Mr. Rankin's other stated reasons to support his request.

A.  **Risk of Flight**

   1.  **Nature and Circumstances of the Offense Charged**

The length of a potential sentence bears on a defendant's risk of flight. Courts routinely find the potential sentence a defendant faces is a weighty consideration in making post-conviction detention determinations. Mr. Rankin faces considerable sentencing exposure given his 17 convictions under the Internal Revenue Code.

The voluntary surrender of his passport does not overcome the statutory presumption in favor of detention. *See, e.g., United States v. Bonilla*, 388 F. App'x 78, 80 (2d Cir. 2010) (affirming district court's detention order "even though [defendant] offered some evidence to challenge the statutory presumption of flight" based on surrender of his passport); *United States v. Jinwright*, No. 3:09-cr-00067, 2010 WL 2926084, at *5 (W.D. N.C. July 23, 2010) (finding that voluntary surrender of passport did not overcome presumption that convicted defendant posed a flight risk). Mr. Rankin's brother resides in the Czech Republic, Mr. Rankin had an office for one of his businesses in Israel where he traveled frequently, and he has made numerous trips to Europe in recent years.

Further, as the government appropriately highlights, "defendants can avoid a court's jurisdiction—and their impending imprisonment—by fleeing both within the United States and without. . . . The Court need look no further than the last inventor with significant financial resources (Tommy Thompson) who sought to avoid capture to see the pitfalls in ordering Mr. Rankin released, even without his passport." (Govt's Mem. in Opp. at 5, ECF. No. 141) (citing Abby Phillip, *How Treasure Hunter Tommy Thompson, "One of the Smartest Fugitives Ever," Was Caught*, The Wash. Post (Jan. 30, 2015) (describing how "one of the most frustratingly intelligent and elusive criminals [federal agents] have ever sought" evaded an arrest warrant for

5

more than two years, all while hiding in Florida); Kathy Gray, *Treasure Hunter Tommy Thompson Arrested at Hotel in Florida*, Columbus Dispatch (Jan. 29, 2015) (same)).

### 2. Weight of the Evidence Against Mr. Rankin

As for the weight of the evidence against Mr. Rankin, the Court finds it is substantial. The evidence at trial overwhelmingly supported the jury's finding of Mr. Rankin's guilt on all 17 counts.

### 3. History and Characteristics of Mr. Rankin

Mr. Rankin's tax-fraud scheme occurred over at least a ten year period. *See, e.g., United States v. Nicolo*, 706 F. Supp. 2d 330, 334 (W.D. N.Y. 2010) (holding that defendant's deceitful and fraudulent behavior stretched over many years demonstrated that he could not be trusted to abide by any conditions of release).

Additionally, the Court noted that Mr. Rankin caused a delay in this case by his implausible Double Jeopardy appeal to the Sixth Circuit. Moreover, there is evidence of obstructive conduct from an earlier foreclosure case. *See Fifth Third Mtge. Co. v. Rankin*, 2012-Ohio-2804, ¶¶ 3-6 (noting trial court found Rankin in contempt of court, ordered the forfeiture of his deposit based on his failure to remit the balance owed on the purchase price, and titled its order as forbidding Rankin from bidding at further sales in view of his attempt to obstruct the Sheriff's foreclosure sale).

Finally, Mr. Rankin argues that he does not pose a risk of flight because one of his employees (and a retired sheriff's detective) avers that Mr. Rankin has strong ties to the community, his children, his grandchild, and his friends. Strong family and community ties are relevant to a defendant's risk of flight, but they are rarely dispositive of the issue, especially

where a statutory presumption in favor of detention arises. *See, e.g., Khanu*, 370 F. App'x at 122 (affirming district court's post-conviction detention order under § 3143(a)(1) despite "appellant's strong family ties in the community").

Despite the assertions to the contrary, Mr. Rankin's family ties in the area are somewhat limited. He is not married, and neither of his adult children (or grandchild) reside in the Southern District of Ohio. Additionally, as the government accurately points out, the Court heard ample testimony that Mr. Rankin willfully refused to pay his employees at CSI, Tuscan Table, and Rankin Enterprises whenever he felt like doing so—withholding paychecks by as much as fifty weeks in one instance and by several months for other employees. Former CSI employees testified that they had to hire attorneys or threaten litigation to receive the pay they were owed once separated from Mr. Rankin's employ. And, the jury found that Mr. Rankin also willfully collected but refused to pay over his employees' federal income tax and F.I.C.A. tax withholding in seven separate quarters—money he still has not paid over to the IRS. In total, the evidence showed that Mr. Rankin still owes roughly $4 to 5 million in federal taxes and that he willfully misled the IRS about for the better part of a decade. Under the circumstances, Mr. Rankin's ties to the community cannot be considered substantial, nor do they work to support a finding that Mr. Rankin does not pose a risk of flight if released.

**B.      Other Stated Reasons for Release**

As for Mr. Rankin's acceptance of the jury verdict, $5,000 restitution payment, and desire to arrange his business affairs to ensure restitution and the well-being of his employees, they do not weigh heavily into the detention determination the Court must make under § 3143(a)(1) as to whether Mr. Rankin has shown by clear and convincing evidence that he does

not pose a flight risk. As the government correctly states, these may be appropriate factors to consider under 18 U.S.C. § 3553(a) at sentencing, but they bear little impact on whether Mr. Rankin should remain detained until his sentencing occurs.

Nevertheless, other defendants have raised similar arguments in an effort to secure their release following convictions, which unsurprisingly have been rejected. A helpful example offered by the government is the *United States v. Jinwright*, No. 3:09-cr-00067, 2010 WL 2926084, at *5 (W.D.N.C. July 23, 2010). In that case, the defendant was a small business owner, and was convicted of multiple counts of filing false tax returns and other federal tax offenses. Like Mr. Rankin, the defendant in that case sought reconsideration of a detention order entered just after the verdicts were read. Similar to Mr. Rankin's arguments, the defendant sought bond by arguing that "his release would be an economic benefit to the taxpayers because it would not only relieve the expense of his detention, but it would also allow him an opportunity to get his business affairs in order so that he can continue repaying his debt to the IRS." *Id.* at *4 (framing the issue as whether the defendant "pose[d] a danger to the economic safety of the community"). And there, as here, the defendant also asserted "that his release would more easily facilitate the sale of his funeral home business," *id.* at *4, and that his continued detention would "deprive [him] of an opportunity to work on his business matters and impair his ability to make payments on the taxes the jury has found he owes," *id.* at *1.

The court rejected the defendant's argument that his release was essential or helpful to paying restitution to the IRS: "The Court finds it disingenuous that Defendant argues in his written pleadings, '[t]he government obviously needs all the tax revenue it can get, since it is running at a substantial deficit. While the amount owed by Defendant to the IRS is substantial, it

will hardly make a dent in the national debt." *Id.* at *4.

The court sympathized with "the difficulties of conducting detailed discussions with potential buyers without being able to directly engage Defendant in those conversations," but likewise concluded that "such hardship does not provide clear and convincing evidence to overcome his burden under 18 U.S.C. § 3143(a)(1)." *Id.* The court held that the defendant's "ability to increase his income is not a sufficient basis to permit his pre-sentence release," even though that income likely would go toward restitution. *Id.* (citing *United States v. Engle*, 592 F.3d 495, 504–05 (4th Cir. 2010), which reversed the district court's decision not to sentence the defendant to imprisonment because of his earning capacity and noted that the ability of a rich tax-evader to pay restitution should not allow him to avoid incarceration).

Moreover, Mr. Rankin's business hardships and concerns are entirely of his own making. Mr. Rankin was under criminal investigation for over six years and under indictment for two years before trial, yet took no action to prepare for his succession at a trio of business he owned based solely on his own belief that he would prevail at trial. Mr. Rankin cannot now convincingly rely on this very lack of planning as a justification for his post-conviction release.

Consequently, the Court is unpersuaded that Mr. Rankin's acceptance of the jury verdict, $5,000 restitution payment, and desire to arrange his business affairs to ensure restitution and the well-being of his employees work to provide sufficient support to his risk of flight arguments for the Court to conclude that he has shown by clear and convincing evidence that he does not pose a flight risk.

### IV.

Based on the foregoing, the Court finds that Mr. Rankin has failed to carry his burden of demonstrating by clear and convincing evidence that he is not a flight risk. The Court also notes

9

that all of the time Mr. Rankin spends incarcerated will be counted toward completing his sentence. Accordingly, the Court **DENIES** Defendant's Motion to Revoke Detention Order. (ECF No. 140.)

**IT IS SO ORDERED.**

    10-5-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**